## Salem

DAVID M. SHAVIN

v.

COMMONWEALTH OF VIRGINIA

No. 0801-92-3

Decided November 9, 1993

COUNSEL

Gerald T. Zerkin (Robert Godfrey; Gerald Zerkin & Associates, on brief), for appellant.

John B. Russell, Jr., Senior Assistant Attorney General (Mary Sue Terry, Attorney General, on brief), for appellee.

OPINION

**ELDER, J.**—David M. Shavin appeals from his misdemeanor conviction for selling an unregistered security in violation of Code §§ 13.1-507 and 520(B). On appeal, he contends that the trial court erred (1) in holding that the evidence was sufficient to prove that he was a seller or offeror of the instrument and that the instrument was a security; (2) in finding that the security did not fall within the statutory provision exempting sales to corporations and investment companies; (3) in finding that application of the statute and its exemptions did not require it to make findings of fact concerning "the intent of a person who does not really exist"—the undercover officer; (4) in finding that appellant was not entrapped by the undercover officer; and (5) in holding that appellant's statutory and constitutional rights to a speedy trial were not violated. For the reasons set forth below, we affirm appellant's conviction.

In the fall of 1986, Special Agent Larry Burchett was working undercover, using the name Larry Parker, to investigate an organization affiliated with Lyndon LaRouche. In that capacity he had several conversations with Rochelle Ascher, who encouraged him to donate or loan money to the organization to advance its political goals. Although Ascher told Burchett that loans were always paid back on time and offered competitive interest rates, Burchett said he would not consider making such a loan unless he could tour the organization's offices. Ascher then made arrangements for Richard Freeman to take Burchett on a tour of the offices of Caucus Distributors, Inc. (CDI), a LaRouche organization located in Leesburg, Virginia.

Burchett met Freeman on September 18, 1986, for a tour of CDI's offices. During that time, Freeman expounded on many of the same ideals of LaRouche that Ascher had already covered and attempted to get Burchett to purchase several of their publications. Burchett then explained that he did not wish to purchase any more LaRouche literature and "was there at [Rochelle Ascher's] request, to determine whether or not I would consider lending money to their organization after I saw that the organization did, in fact, exist." Freeman then proceeded to explain the loan process, which he said would take the form of a promissory note which "would be filled out and signed by the officers of their corporation and sent to [Burchett] within 2 days." When Burchett told Freeman he did not feel comfortable turning over the check before receiving the note, "Freeman . . . stated that he would have a temporary loan agreement typed out stating the conditions of

the loan, the amount, and the interest to be paid." Freeman then left the room and returned with a piece of paper entitled "Temporary Loan Agreement," which included the terms of the loan and the signatures of Freeman and David Shavin. Freeman also stated that "they" would rather pay the interest on the note annually, rather than quarterly, to which Burchett agreed. Burchett then presented Freeman with a check for $5,000, drawn on an account in the name of Larry D. Parker, trading as Parker Properties. Burchett had earlier represented to Ascher, Freeman and Haight, another of their associates, that he was a real estate investor and owned a number of companies.

Burchett then received two letters acknowledging his loan. One letter was signed by George Canning, Secretary, with a carbon copy to Richard Freeman. The other letter was signed by David Shavin, for Caucus Distributors, Inc. The letter of indebtedness signed by Canning was one of approximately 5,000 such letters routinely issued by CDI. However, the temporary loan agreement and letter signed by Shavin are believed to be unique. None of these documents was registered with the State Corporation Commission.

Appellant was indicted on February 17, 1987, and subsequently filed various discovery requests and pre-trial motions. Several other employees of CDI and affiliated LaRouche organizations were also indicted. Orally, on June 25, 1987, and in writing, on August 26, 1987, appellant agreed to waive his speedy trial rights under Code § 19.2-243. The parties disagree, however, as to the extent of that waiver. Although the Commonwealth asserts that this was a general waiver, appellant argues that the waiver applied only so long as necessary to resolve his pending pre-trial claims.

All pre-trial motions were disposed of as of April 12, 1989. Appellant agreed to have his trial continued until the completion of the "Billington" trial, which ended on October 24, 1989. In addition, he concurred in the general scheduling process used in this prosecution. On September 15, 1989, his counsel agreed that "the operating premise of all my clients and myself . . . was that these cases would be tried alphabetically."[1] Also at that hearing, the trial court stated that additional judicial resources could be allocated in order to see that the defendants were tried in a timely fashion, but the prosecutor was unable to say whether his office could allocate the necessary prosecutor-

---

[1] The cases referred to involved others who were indicted for their alleged involvement with the sale of unregistered securities.

ial resources. Subsequently, upon request of appellant's counsel, the Commonwealth notified him by letter dated November 15, 1989, of the expected order of the remaining trials. Despite the court's direction to counsel to voice any objections to the schedule within two weeks of receiving it, appellant neither objected to the schedule nor asked to be tried earlier. Finally, on more than one occasion, the Commonwealth offered to try appellant jointly with other defendants, but appellant declined. On September 30, 1991, appellant filed an "Assertion and Notice of Speedy Trial Rights." By letter dated December 16, 1991, the Commonwealth notified appellant that it was willing to proceed with appellant's trial beginning as early as January 16, 1992. Appellant's new counsel was unable to proceed at that time, however, and appellant was not tried until March 1992.

It appears from the record that the trial judge thought the defendants' waiver of their right to a speedy trial was a general waiver. In its order of October 31, 1988, it noted the following: "Defense counsel moved the Court to continue all other cases generally pending disposal of the *Ascher* and *Billington* cases, which motion was granted, noting that *all defendants have waived their rights to speedy trial.*"

## I.

In reviewing the sufficiency of the evidence on appeal,

we [view] the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom. The judgment of a trial court sitting without a jury is entitled to the same weight as a jury verdict and will not be set aside unless it appears from the evidence that the judgment is plainly wrong or without evidence to support it.

*Martin v. Commonwealth,* 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987).

## A.

Appellant contends first that the evidence was insufficient to show that he was a seller or offeror under Code § 13.1-507. That section makes it unlawful "to offer or sell any security unless the security is registered under this chapter or the security or transaction is exempted by this chapter." Under Code § 13.1-501,

"Offer" includes every attempt or offer to dispose of, or solicitation of an offer to buy, a security or interest in a security for

value [and] "[s]ale" or "sell" includes every contract of sale of, contract to sell, or disposition of, a security or interest in a security for value.

Appellant argues that the United States Supreme Court interpreted similar language used in the Federal Securities Act in *Pinter v. Dahl,* 486 U.S. 622 (1988), and that this interpretation should be applied to the Virginia Act. Although the provision at issue in *Pinter* dealt with civil rescission as opposed to criminal penalties, we nevertheless find *Pinter* instructive. Contrary to appellant's assertions, however, we believe *Pinter* makes clear that appellant *was* a seller or offeror of securities under Code § 13.1-507 of the Virginia Act.

At issue in *Pinter* was the interpretation of 15 U.S.C. § 77l, which states that "Any person who . . . offers or sells a security in violation of section 77e of this title [which prohibits use of U.S. mails to sell or deliver an unregistered security] . . . shall be liable to the person purchasing such security who may sue . . ." subject to certain limitations. The Federal Securities Act defines the terms "offer" and "sell" in essentially the same fashion as the Virginia Act. *See* 15 U.S.C. § 77b(3) (1981). The facts in *Pinter* were very different from those presented here. Petitioner Pinter, a securities dealer, sold unregistered securities to respondent Dahl, who then gratuitously assisted family and friends in making similar purchases. 486 U.S. at 625-26. The issue in *Pinter* was whether Dahl was a seller or offeror of the securities under the Federal Act. The Court noted that, "[a]t the very least, . . . the language of [the Federal Act] contemplates a buyer-seller relationship not unlike traditional contractual privity . . . [such that it] imposes liability on the owner who passed title, or other interest in the security, to the buyer for value." *Id.* at 642. Only because "Dahl . . . was not a seller in this conventional sense" did the Court find it necessary to determine whether "liability extends to persons other than the person who passes title." *Id.* As a result, the Court focused the bulk of its discussion on whether one who was not a transferor of title and received no financial gain from the sales could nevertheless be a seller or offeror under the Act. In so doing, it analyzed the process of soliciting the buyer, noting that this was "perhaps the most critical stage of the selling transaction." *Id.* at 646. It did not hold, however, that participation in the solicitation was necessary for liability if one was a transferor of title or even partial title. *See id.* at 642; *see also Rubin v. United States,* 449 U.S. 424, 430 (1981) ("It is not essential under the terms of the Act that full title pass to a transferee for the transaction to be an 'offer' or a 'sale'").

■ Clearly, the transfer of full or partial title is a sale under the Act. Although the United States Supreme Court has not considered the issue, we agree with the Second Circuit's conclusion that a contract for the issuance or transfer of a security also may qualify as a sale under the Act. *Yoder v. Orthomolecular Nutrition Inst.*, 751 F.2d 555, 559-60 (2d Cir. 1985); *see also Llanos v. United States*, 206 F.2d 852, 854 (9th Cir. 1953), *cert. denied*, 346 U.S. 923 (1954). We hold, therefore, that appellant's execution of the temporary loan agreement constituted the sale as defined in the Virginia Securities Act.

### B.

■ Appellant also contends that the evidence was insufficient to support his conviction because it does not show that the temporary loan agreement was a security. Clearly, the subsequently issued document—a promissory note signed by George Canning—was a security. Indeed, we reached just such a conclusion in *Ascher v. Commonwealth*, 12 Va. App. 1105, 1120-21, 408 S.E.2d 906, 915-16 (1991), *cert. denied*, 113 S. Ct. 190 (1992), in which we analyzed the very same note. We also conclude that the temporary loan agreement executed by appellant and George Freeman was a security. As defined under the Virginia Act, "'[s]ecurity' means any note; stock; . . . bond; debenture; [or] evidence of indebtedness . . . or any . . . temporary or interim certificate for . . . any of the foregoing." Code § 13.1-501. The temporary loan agreement at issue here falls squarely within two of these categories as both evidence of indebtedness and an interim certificate for a note. *See also Yoder*, 751 F.2d at 559-60 (contract for issuance or transfer of a security may qualify as sale of security under Federal Securities Act); *Lawrence v. S.E.C.*, 398 F.2d 276, 279-80 (1st Cir. 1968) (a broker's written commitment to deliver shares of stock when issued was security under the Act). We hold, therefore, that the evidence was sufficient to support the trial court's finding that the temporary loan agreement was a security.

### II.

Second, appellant contends that the instrument was exempt from coverage of the Virginia Securities Act under Code § 13.1-514(B)(6) because it was sold to a corporation or investment company. Subsection (C) of that statute provides that "[i]n any proceeding under this chapter, the burden of proving an exemption shall be on the person claiming it." Code § 13.1-514(C). Appellant asserts that in a criminal proceeding, he had only the burden of production and that once

he satisfied it, the burden then shifted to the Commonwealth to prove beyond a reasonable doubt that the exemption did not apply. However, the cases he cites in support of this assertion are from other jurisdictions, and such an interpretation is entirely at odds with the wording of the statute. Despite appellant's assertions, the statute places the burdens of production and persuasion on him. *Cf.* Code § 18.2-263 (similar language applied to drug cases). Clearly, such an allocation is constitutionally permissible. *See* 1 Paul H. Robinson, *Criminal Law Defenses* § 5(b), at 48-50 (1984) (citing *Patterson v. New York*, 432 U.S. 197, 206-07 (1977) (in case of defense to statutory crime provided in form of exception, legislature is free to place burden of persuasion on the defendant)). Accordingly, appellant bore the burden of proving entitlement to the defense by a preponderance of the evidence. *Id.*

Under the evidence in this case, although Burchett "represented that he was in the real estate investment business and had a number of companies" with overlapping boards of directors, the burden remained on appellant to ascertain, prior to entering into the challenged transaction, that Burchett was operating as a corporation or investment company as those terms are used in the Code. The burden of proving this fact remained on appellant at trial. In addition, the statute provides no exception for situations in which appellant may reasonably have believed that the buyer was operating in this context. *See Stewart v. Ragland*, 934 F.2d 1033, 1041 (9th Cir. 1991) (citing Cal. Corp. Code § 25102) (holding that buyer's representation was insufficient under statute at issue because it contains requirement "that the interests be concurrently hypothecated," whereas other sections of the California Corporations Code do not so require). If appellant had wanted to confirm that the statutory exception applied, he could have contacted the State Corporation Commission, which keeps records of all domestic corporations, *see, e.g.,* Code §§ 13.1-621-627, §§ 13.1-805-826, and those foreign corporations authorized to transact business in the Commonwealth. Code § 13.1-757.

III.

■ Third, appellant argues that the evidence was insufficient to support his conviction because it required that the court make a finding of intent as to a fictitious person, the Larry Parker portrayed by Agent Burchett. After examining the statutes under which appellant was convicted, we disagree. Code § 13.1-507 makes it unlawful "to offer or sell any security unless the security is registered . . . or ex-

empt[] [from registration]." Because we concluded earlier in this opinion both that the temporary loan agreement issued to Burchett was an unregistered security and that appellant was a seller or offeror of that security, the evidence clearly supports his conviction. Although appellant argues that the buyer's intent is relevant to whether the exemption of Code § 13.1-514(B)(6) applies, that subsection gives no such indication. It exempts from certain registration requirements "[a]ny offer or sale to a corporation [or] investment company." As stated above, it provides no exception for situations in which appellant may reasonably have believed that the buyer was operating in this context.

In addition, although the buyer's intent may be used as evidence by the seller in an attempt to show that the note is not a security, *see Ascher,* 12 Va. App. at 1123, 408 S.E.2d at 918 (holding that if "seller is raising operational funds for an enterprise and the buyer is interested in profit, the instrument is most likely to be a 'security'"), such evidence is not relevant here because we have determined, as stated above, that the temporary loan agreement at issue is a security. *Id.* at 1120-21, 408 S.E.2d at 915-16. Even if we had not already made such a determination, the absence of evidence as to the buyer's intent would merely reduce the number of avenues under *Reves v. Ernst & Young,* 494 U.S. 56, 66-67 (1990), by which a defendant may seek to rebut the presumption that the agreement is a security. The absence of such evidence does not invalidate appellant's conviction.

## IV.

■ Fourth, appellant asserts that his conviction is invalid because he was entrapped by Burchett. Critical to this determination are the trial court's findings of fact, to which we give great deference on appeal. *Schneider v. Commonwealth,* 230 Va. 379, 382, 337 S.E.2d 735, 737 (1985). The evidence, viewed in the light most favorable to the Commonwealth, shows that Burchett did not ask for the temporary loan agreement; rather, Freeman offered it and obtained appellant's signature in addition to his own. Appellant also signed the letter sent to Burchett to confirm the receipt of his money, which Burchett did not solicit. Although appellant may not have been a regular participant in the loan process, this fact does not support his contention that he was entrapped by Burchett. "[T]here is nothing improper in the use, by police, of decoys, undercover agents and informers to invite the exposure of willing criminals and to present an opportunity to one willing to commit a crime." *Id.* at 381, 337 S.E.2d at 736 (quoting *Stamper v. Commonwealth,* 228 Va. 707, 715, 324 S.E.2d 682, 687

(1985)). In addition, "[i]t is not necessary . . . that the evidence prove that an accused has previously committed the same offense with which he is charged in order to establish that he was predisposed to commit an offense." *McCoy v. Commonwealth,* 9 Va. App. 227, 233, 385 S.E.2d 628, 631 (1989). We conclude, therefore, that Officer Burchett did not entrap appellant into committing the offense.

## V.

Lastly, appellant contends that his conviction must be dismissed because his rights to a speedy trial under both the Virginia Code and the Federal Constitution were violated.

## A.

Under Code § 19.2-243, appellant was entitled to be tried within nine months of his indictment or arrest, whichever was later. The running of this statute may be tolled, however, for several different reasons, as set forth in the statute, which include the granting of a motion for a continuance made by the accused or his concurrence in such a motion made by the Commonwealth. Appellant admits that he waived his speedy trial rights in writing to the extent necessary to allow the resolution of his pre-trial motions and that, once those motions were resolved, he agreed to a continuance until the completion of the Billington trial on October 24, 1989. However, he argues that the nine-month limitation period began to run unencumbered as of that date and expired long before his trial in March 1992. The Commonwealth argues that appellant's written waiver of his speedy trial rights was general such that the nine-month limitation period was tolled until he revoked the waiver by written notice on September 30, 1991. Alternatively, the Commonwealth argues that the nine-month limitation period was tolled under Code § 19.2-243(3), because the delay was due to "the granting of a separate trial at the request of a person indicted jointly with others for a felony."

The burden is on the Commonwealth to prove that the delay in trying appellant was excusable, based either on one of the reasons enumerated in the statute or on appellant's waiver of his right to be tried within the designated period. *See Godfrey v. Commonwealth,* 227 Va. 460, 463, 317 S.E.2d 781, 782 (1984); *Rose v. Commonwealth,* 189 Va. 771, 774, 55 S.E.2d 33, 34 (1949). Assuming arguendo that the waiver was limited, such that the statute was tolled only until completion of the Billington trial on October 24, 1989, the nine-month period expired prior to appellant's trial in March

1992. The Commonwealth asserts that the statute was tolled beyond that date under Code § 19.2-243 because the "delay [was] due to the 'granting of a separate trial at the request of a person indicted jointly with others for a felony.'" *See Walker v. Commonwealth,* 225 Va. 5, 11, 301 S.E.2d 28, 31 (1983) (quoting Code § 19.2-243). However, that provision applies only when one crime is involved and persons are jointly indicted. *Id.* In this case, although others were indicted on the same day for committing the same crime based on similar acts, the indictments were separate. Accordingly, the delays resulting from appellant's refusal to be tried jointly with any of the other defendants are chargeable against the Commonwealth and the defendant's assertion of this right did not toll the running of the speedy trial statute.

We consider next whether appellant's written waiver was limited to the resolution of his pre-trial motions or constituted a general waiver until revoked. The following exchanges, which took place at the hearing of June 25, 1987, are relevant to this issue. The Commonwealth stated at that time, "we won't oppose the [requested] continuance if we get the waiver of speedy trial from all Defendants." Mr. Clark, counsel for several defendants other than appellant, responded "it's on our motion . . . and I've discussed with my clients waiving the application of 19.2-243 and they are in agreement." The trial judge then correctly noted, "If it's on your motion, [the time period] will be excluded [under the terms of] the statute." Clark replied, "Yes, sir. . . . Absolutely." On that basis, the trial judge granted "[t]he motion, which I assume you all concur in." The judge returned to the issue again, however, by asking the prosecutor, "[I]s there to be any problem in getting . . . a waiver of speedy trial[?] Do you stand on that in light of the fact that the continuance is on the Motion of the accused?" After the prosecutor responded, "We prefer a waiver just to make sure that we don't run into problems later on," the trial court directed that a written waiver be obtained from all defendants.

The written waiver, filed August 27, 1987, detailed the defendants' various pre-trial motions and their agreement with the Commonwealth to waive their speedy trial rights in order to obtain a continuance on their motion under Code § 19.2-243. The actual language of the waiver is as follows:

> [T]he Court requested that such waiver as had already been agreed to by counsel following consultation with Defendants herein, be memorialized and filed with this Court, reflecting the fact that each Defendant does waive any such right to a speedy

trial as guaranteed under Section 19.2-243, as a result of each Defendant's preference to have a full and fair hearing and briefing on all their claims including those discussed herein, and accordingly, Defendants herein (including those who stand indicted by misdemeanor), do hereby WAIVE their rights to have their cases commenced within the time limits prescribed by Virginia Code Section 19.2-243.

Although not dispositive, it appears from the record that the trial judge thought the waiver was general. In his order of October 31, 1988, he noted the following: "Defense counsel moved the Court to continue all other cases generally pending disposal of the *Ascher* and *Billington* cases, which motion was granted, noting that all defendants have waived their rights to speedy trial."

 We note first that Code § 19.2-243 is the statutory embodiment of the constitutional right to a speedy trial, *Clark v. Commonwealth,* 4 Va. App. 3, 5, 353 S.E.2d 790, 791 (1987), and that "[t]here is a presumption against a defendant's waiver of any constitutional right." *Sisk v. Commonwealth,* 3 Va. App. 459, 462, 350 S.E.2d 676, 678 (1986). We conclude, however, based upon our examination of the oral and written waivers, that appellant waived his right to be tried within the period specified in Code § 19.2-243 such that the running of the statute was tolled until he revoked his waiver on September 30, 1991. Although the discussion held on the record on June 25, 1987, could be construed narrowly, neither appellant nor his attorney participated in that discussion, and the order itself, as quoted above, contained much broader language. Implicit in the use of the phrase "on *all* their claims *including* those discussed herein" is that the waiver was not limited to those motions outlined at the hearing or in the waiver. As the trial judge noted at the June 25, 1987, hearing, the written waiver would have been unnecessary if its only purpose was to toll the statute during the resolution of the defendant's motions; the statute already included such a provision.[2] In addition, appellant failed to challenge the broad interpretation given the waiver in the trial court's order of October 31, 1988, and failed to object to the order of trials proposed by the Commonwealth in its letter of November 15, 1989. Although we are aware that silence itself does not constitute a waiver,

---

[2] This rationale was also implicit in the holding in *Ohio v. O'Brien,* 516 N.E.2d 218 (Ohio 1987), which involved a statutory scheme very similar to Virginia's. *See* Ohio Rev. Ann. §§ 2945.71(B)(2), 2945.72(H) (Anderson 1993). The defendant in *O'Brien* filed a motion for a continuance which contained the following language:

*see Godfrey,* 227 Va. at 463, 317 S.E.2d at 783, we hold that silence in response to the court's interpretation of a pre-existing written waiver may estop an accused from challenging the tolling of the statute until he or she registers an objection or revokes the waiver. Under this theory, the statute was tolled until September 30, 1991; therefore, the nine-month limitation period did not expire prior to appellant's trial.

## B.

We next examine appellant's claim that the Commonwealth violated his right to a speedy trial under the Sixth Amendment. In *Barker v. Wingo,* 407 U.S. 514 (1972), the United States Supreme Court set forth a balancing test to be used in examining such claims, which requires consideration of the "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." *Id.* at 530 (footnote omitted). The Court further refined this relationship in *Doggett v. United States,* 112 S. Ct. 2686, 2690 (1992), in which it created a three-tiered test requiring varying levels of prejudice depending on the degree of culpability of the government:

> Defendant acknowledges that allowance of this Motion for continuance constitutes a waiver of Defendant's right to be brought to trial within 90 days of the commencement of this action as provided by [the speedy trial provisions of the Ohio Code] and does, hereby, expressly waive Compliance with [those provisions] in each of the above captioned actions.

*O'Brien,* 516 N.E.2d at 219. Following the granting of appellant's motion for a continuance, the trial court granted two additional continuances, one on its own motion and the other on the motion of the Commonwealth. Although counsel for appellant phoned the prosecutor to object to this second continuance, he registered no formal objection with the court to either continuance. *Id.*

On appeal, the Ohio Supreme Court held that "[t]he waiver given by the defendant . . . was unlimited in duration" and "remained effective throughout the period of delays occasioned by the state": "[F]ollowing an express written waiver of unlimited duration by an accused of his speedy trial rights[,] the accused is not entitled to a discharge for delay in bringing him to trial unless the accused files a formal written objection to any further continuances and makes a demand for trial." *Id.* at 221; *see also Ohio v. Evans,* Rec. No. 90-A-1501, 1991 WL 70783, at *2 (Ohio Ct. App. 1991) (Because "there was no need for appellant to waive time just for the duration of that particular motion, as the motion itself would automatically toll the time under R.C. 2945.72(H) . . ., the court was justified in reading the waiver as pertaining to the entire case"); *Pennsylvania v. Scott,* 414 A.2d 1095, 1096-97 (Pa. Super. Ct. 1979) (holding under similar statutory scheme that written application for continuance, which contained wording "I understand by requesting/agreeing to a continuance I hereby waive my rights to a prompt trial under Rule 1100," was a general waiver not limited solely to the period of the continuance), *aff'd,* 445 A.2d 103 (Pa. 1982).

Where the government proceeds "with reasonable diligence," the "speedy trial claim would fail . . . as a matter of course however great the delay, so long as [the defendant] could not show specific prejudice to his defense. Where "the Government . . . intentionally [holds] back in its prosecution of him to gain some impermissible advantage at trial, [such] official bad faith in causing delay . . . would present an overwhelming case for dismissal." Where the government is negligent in pursuing a defendant, prejudice will be presumed and its weight in defendant's favor will depend on the length of the delay.

*United States v. Aguirre,* 994 F.2d 1454, 1456 (9th Cir. 1993) (quoting *Doggett,* 112 S. Ct. at 2693) (footnote and citations omitted).

The length of the delay between arrest and trial was the same here as in *Barker*—five years. *Barker,* 407 U.S. at 533. In *Barker,* however, only seven months of that period was considered excusable delay. Here, two-and-a-half years was excusable based on appellant's admitted consent. Therefore, the length of the delay at issue here was less egregious than that in either *Barker* (four-and-a-half years) or *Doggett* (six years).

 The reason for the delay in this case is questionable, for the trial court made no findings of fact on this issue. Appellant concedes in his brief that "it does not appear that the Commonwealth has caused delay deliberately to impair the defense." We assume arguendo that the Commonwealth was at least negligent in failing to bring appellant to trial sooner, and we apply the middle test as set forth in *Doggett:* prejudice will be presumed and its weight in appellant's favor will depend on the length of the delay. We note, however, that "such presumptive prejudice [without more] cannot alone carry a Sixth Amendment claim." *Doggett,* 112 S. Ct. at 2693. Rather, "it is [merely] part of the mix of relevant facts, and its importance increases with the length of the delay." *Id.* As stated above, the delay at issue here was shorter than in *Doggett* and also less prejudicial. Although the delay attributable to the Commonwealth in that case was six years, eight-and-one-half years elapsed between the accused's indictment and trial, and the undisputed evidence showed that he was unaware of his indictment prior to his arrest and, therefore, had no incentive to prepare a defense. 112 S. Ct. at 2691. The delay in this case, by contrast, was significantly shorter, and appellant was aware of his indictment and the trials of related defendants as they took place. As a result, the likeli-

hood of prejudice was much smaller than in *Doggett*. The delay in this case was also significantly shorter than that at issue in *Barker*.

We believe the deciding factor in this case concerns the timing of appellant's assertion of his speedy trial right. Although a defendant does not forever waive his right to a speedy trial by failing to assert it, it is "one of the [four] factors to be considered in an inquiry into the deprivation of the right." *Barker*, 407 U.S. at 528. As discussed in the preceding section, appellant acquiesced in the prosecutor's proposed order of trials and did not formally assert his right to a speedy trial until he filed a written motion on September 30, 1991. He was then tried within six months of his assertion of that right. Although *Barker* and *Doggett* require us to presume that appellant was prejudiced by the delay, the length of the delay attributable to the Commonwealth is so short that it overcomes this presumption. Viewing appellant's waiver of his right combined with the short period of time which passed between his reassertion of that right and his trial, we hold that his Sixth Amendment right to a speedy trial was not violated.

For the reasons set forth above, we affirm appellant's conviction.

*Affirmed.*

Koontz, J., and Fitzpatrick, J., concurred.