COURT OF APPEALS OF VIRGINIA

Present: Judges Athey, Friedman and Raphael
Argued at Richmond, Virginia

**UNPUBLISHED**

ZAVIA RAYMON MURPHY

v.       Record No. 1774-22-2

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION* BY
JUDGE FRANK K. FRIEDMAN
MAY 28, 2024

FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
Lynn S. Brice, Judge

Lauren Brice, Assistant Public Defender (Virginia Indigent Defense
Commission, on briefs), for appellant.

Matthew P. Dullaghan, Senior Assistant Attorney General (Jason S.
Miyares, Attorney General, on brief), for appellee.

In 2019, Zavia Raymon Murphy was arrested and later indicted for malicious wounding and use of a firearm in the commission of that offense, in violation of Code §§ 18.2-51 and 18.2-53.1. In a prior appeal, this Court reversed the trial court's pretrial ruling dismissing Murphy's indictments on constitutional speedy trial grounds and remanded the case for further proceedings. *See Commonwealth v. Murphy*, No. 0197-21-2 (Va. Ct. App. Aug. 10, 2021) (*Murphy I*). After his conviction on remand, Murphy appeals, contending that the trial court correctly granted the motion to dismiss and that this Court's opinion in *Murphy I* was erroneous.[1] For the following reasons, we affirm.

---

* This opinion is not designated for publication. *See* Code § 17.1-413(A).

[1] Under Code § 17.1-410(A), a criminal defendant, if convicted following a pretrial appeal by the Commonwealth under Code § 19.2-398(A), may request that this Court "on direct appeal . . . reconsider an issue which was the subject of the pretrial appeal[.]" *See also* Code § 19.2-409 (same). Thus, this Court has authority to reconsider whether Murphy's constitutional speedy trial rights were violated.

BACKGROUND[2]

On December 28, 2019, police arrested Murphy on warrants for aggravated malicious wounding and using a firearm in the commission of a felony. On February 10, 2020, the Commonwealth reduced the primary charge to malicious wounding and Murphy waived a preliminary hearing. On March 16, 2020, the day the grand jury was scheduled to act on the charges, the Supreme Court of Virginia issued an order declaring a judicial emergency in response to the COVID-19 pandemic. *See In re: Order Declaring a Judicial Emergency in Response to COVID-19 Emergency* at 1-2 (Va. Mar. 16, 2020) ("First Judicial Emergency Order").[3] The First Judicial Emergency Order restricted trials and "toll[ed] and extend[ed]" "all deadlines" in district and circuit courts for 21 days, consistent with Code § 17.1-330(D). The Supreme Court unanimously entered 46 additional judicial emergency orders, which extended the period of the judicial emergency and tolled and extended certain statutory deadlines, including the deadlines under the Speedy Trial Act, Code § 19.2-243.[4] Under those orders, the Supreme Court initially prohibited jury trials from May 6, 2020, through July 8, 2020. *See* EDO

---

[2] "On appeal, this Court views the evidence and all reasonable inferences flowing from it in the light most favorable to the Commonwealth, the party who prevailed in the trial court." *Ali v. Commonwealth*, 75 Va. App. 16, 27 n.2 (2022) (quoting *Goodwin v. Commonwealth*, 71 Va. App. 125, 129 n.1 (2019)).

[3] Additional references in this memorandum opinion to the Supreme Court's First Judicial Emergency Order and subsequent related orders are to "[#] Judicial Emergency Order," "[#] Order," or "EDO of [date]." *See* EDO of Apr. 22, 2020, at 1 (referring to the Supreme Court's first three orders "collectively . . . as the 'Emergency Declaration Orders'").

[4] *See* EDOs of Mar. 27, 2020; Apr. 22, 2020; May 1, 2020 (Clarification Order); May 6, 2020; June 1, 2020; June 8, 2020; June 22, 2020; June 22, 2020 (Modification Order); July 8, 2020; July 29, 2020; Aug. 7, 2020 (Amendment Order); Aug. 20, 2020; Sept. 4, 2020; Sept. 11, 2020 (Second Clarification Order); Sept. 28, 2020; Oct. 19, 2020; Nov. 9, 2020; Dec. 3, 2020; Dec. 18, 2020; Jan. 19, 2021; Feb. 8, 2021; Mar. 2, 2021; Mar. 15, 2021; Apr. 12, 2021; May 3, 2021; May 17, 2021; May 26, 2021; June 15, 2021; June 29, 2021; July 7, 2021; Aug. 4, 2021; Aug. 11, 2021 (Authorization Order); Aug. 25, 2021; Sept. 20, 2021; Oct. 5, 2021; Oct. 25, 2021; Nov. 18, 2021; Dec. 10, 2021; Dec. 29, 2021; Jan. 20, 2022; Feb. 10, 2022; Mar. 4, 2022; Mar. 25, 2022; Apr. 15, 2022; May 2, 2022; May 27, 2022.

of May 6, 2020, at 5 ¶ 12; EDO of June 22, 2020, at 5 ¶¶ 15-16; EDO of July 8, 2020, at 1 ¶ 2. It later authorized jury trials to resume in each judicial circuit that had received the Court's approval of a written plan detailing how that circuit would safely conduct jury trials during the pandemic. *See* EDO of June 22, 2020, at 5-6 ¶¶ 15-16; EDO of July 8, 2020, at 1 ¶ 2. The period of judicial emergency eventually extended from March 16, 2020, through June 22, 2022. *See* EDO of May 27, 2022, at 2.

On May 18, 2020, a grand jury returned true bills on indictments for Murphy for malicious wounding and using a firearm in committing a felony. At Murphy's request, the circuit court set a hearing for June 25, 2020. Murphy intended to plead guilty to the charges on that date. At the hearing, Murphy instead demanded a jury trial and requested new counsel. The court appointed new counsel and scheduled a jury trial for September 15, 2020.

In mid-September, Murphy's second attorney withdrew as counsel due to a conflict and the court appointed a third attorney for him. On November 2, 2020, the circuit court received approval to resume jury trials and the court set Murphy's jury trial for January 5, 2021. The court later continued Murphy's jury trial to February 26, 2021, because COVID-19 quarantine restrictions at the jail housing Murphy prevented him from being transported to attend trial. On January 26, 2021, the circuit court released Murphy on bail.

On February 22, 2021, Murphy moved to dismiss the indictments on constitutional speedy trial grounds. After a hearing, the circuit court granted the motion to dismiss. Ultimately, the circuit court weighed each of the *Barker v. Wingo*, 407 U.S. 514 (1972), factors in Murphy's favor. The Commonwealth appealed under Code § 19.2-398(A)(2), and this Court reversed and remanded the case for further proceedings, *see Murphy I*, slip op. at 20-21, finding that Murphy's constitutional rights were not violated. In *Murphy I*, the panel first found that the length of delay was presumptively prejudicial (the first factor), thus the panel moved on to

analyze the other three factors of the four-factor *Barker* test: the reason for the delay, the defendant's assertion of the right, and prejudice against the defendant due to the delay. *Barker*, 407 U.S. 514. As to factor two, the panel in *Murphy I* determined that the circuit court erred by weighing the pandemic-related delay significantly in the defendant's favor. The panel concluded that, instead, the circuit court should have classified the cause for delay—the pandemic—as valid and unavoidable because it was outside the Commonwealth's control. The panel found that the assertion-of-right factor weighed only slightly in the defendant's favor because he did not mention his speedy trial rights until 35 days before trial as opposed to the circuit court, which weighed assertion of right in the defendant's favor with no limitations. Under the fourth and final factor, the panel in *Murphy I* determined that the defendant's alleged prejudice was speculative and thus that factor was improperly weighed in the defendant's favor by the circuit court.

On remand, Murphy entered a conditional guilty plea to the amended unlawful wounding charge and the Commonwealth dismissed the use of a firearm charge by nolle prosequi. Murphy filed a timely notice of appeal.

In this appeal, Murphy contends that the circuit court correctly granted the motion to dismiss and that *Murphy I* was erroneous because this Court misapplied the four-factor test under *Barker*. 407 U.S. 514. In so doing, Murphy purports to rely on *Ali v. Commonwealth*, 75 Va. App. 16 (2022), which was decided after *Murphy I* and clarified the proper application of the *Barker* test; Murphy asserts that this Court erred in *Murphy I* by failing to attribute delays caused by the pandemic to the Commonwealth and by concluding that those delays were justified. Additionally, Murphy argues that *Murphy I* erroneously held that Murphy did not assert his constitutional speedy trial rights until about 13 months after his arrest and that this delay weighed against finding a constitutional speedy trial violation. Finally, Murphy contends that

- 4 -

*Murphy I* failed to consider his "undue and oppressive" pretrial incarceration and "anxiety" in assessing whether he demonstrated prejudice. For reasons more fully explained below, we find no error in the *Murphy I* decision and thus affirm Murphy's conviction.

ANALYSIS

A constitutional speedy trial challenge presents "'a mixed question of law and fact,'" for which "this Court gives deference to the trial court's factual findings but reviews statutory interpretations and legal conclusions *de novo*." *Osman v. Commonwealth*, 76 Va. App. 613, 657 (2023) (quoting *Young v. Commonwealth*, 297 Va. 443, 450 (2019)). "[Factual] findings may not be disturbed unless 'plainly wrong' or 'without evidence to support them.'" *Ali*, 75 Va. App. at 33 (quoting *Wilkins v. Commonwealth*, 292 Va. 2, 7 (2016)).

"Both the United States and Virginia Constitutions provide criminal defendants with the right to a speedy trial." *Id.* at 33-34 (citing U.S. Const. amend. VI; Va. Const. art. 1, § 8). "Virginia's constitutional speedy trial right is coextensive with the federal right." *Id.* at 34 (citing *Holliday v. Commonwealth*, 3 Va. App. 612, 615-16 (1987)). "Accordingly, such claims may be analyzed 'without distinction.'" *Id.* (quoting *Holliday*, 3 Va. App. at 615). "The remedy for such a violation, if proved, is dismissal of the charge with prejudice." *Id.*

Constitutional speedy trial challenges are governed by a four-factor balancing test. *Osman*, 76 Va. App. at 659-60 (citing *Barker*, 407 U.S. at 521). "The four factors of that test are: (1) the length of delay, (2) the reasons for the delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant." *Id.* (quoting *Barker*, 407 U.S. at 530). "None of the factors is either 'necessary or sufficient' to finding a violation." *Ali*, 75 Va. App. at 35 (quoting *Kelley v. Commonwealth*, 17 Va. App. 540, 544 (1994)). "An appellant must establish that those factors, when considered together, 'weigh in his favor.'" *Osman*, 76 Va. App. at 660 (quoting *Ali*, 75 Va. App. at 35).

I. *Length of delay*

The "triggering mechanism" for a constitutional speedy trial analysis is the length of the delay. *Barker*, 407 U.S. at 530. Absent "sufficient delay to be 'presumptively prejudicial, there is no necessity for inquiry into the other factors.'" *Kelley*, 17 Va. App. at 544 (quoting *Barker*, 407 U.S. at 530). The delay is calculated from the time of the defendant's arrest. *Fowlkes v. Commonwealth*, 218 Va. 763, 766 (1978). It is well-established that delay "approach[ing] one year" is "presumptively prejudicial" and requires further inquiry. *Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992).

Here, Murphy recognizes that *Murphy I* "correctly concluded" that the approximately 13-month delay between his arrest and the dismissal of his charges was presumptively prejudicial.

II. *Reasons for delay*

"Once it is established that a delay was '"presumptively prejudicial," the burden "[shifts to] the Commonwealth,"' under the second factor of the *Barker* test, to show two things." *Ali*, 75 Va. App. at 36 (quoting *Beachem v. Commonwealth*, 10 Va. App. 124, 131 (1990)). "First, the prosecution must show 'what delay was attributable to the defendant and not to be counted against the Commonwealth.'" *Id.* (quoting *Fowlkes*, 218 Va. at 767). "Second, it must show what part of any delay not attributable to the defendant was 'justifiable.'" *Id.*

"Although any delay not attributable to the defendant is the responsibility of the Commonwealth for speedy trial purposes, 'different weights should be assigned to different reasons' for delay." *Id.* at 42 (quoting *Barker*, 407 U.S. at 531). "The three categories of fault for delay attributable to the Commonwealth are: (1) 'deliberately improper' delay, (2) 'merely negligent' delay, and (3) 'valid and unavoidable' delay." *Osman*, 76 Va. App. at 661 (quoting *Ali*, 75 Va. App. at 42). "Deliberate delay 'should be weighed heavily' against the

Commonwealth, whereas negligence should receive less weight." *Id.* at 661-62 (quoting *Ali*, 75 Va. App. at 42). "'[A] reason deemed "valid" fully "justif[ies] appropriate delay"' and thus does not weigh in appellant's favor." *Id.* at 662 (alterations in original) (quoting *Ali*, 75 Va. App. at 42).

Under those principles, we have held that delays due to the pandemic that did not involve "either *intentional* harm or negligence toward the defendant" were valid, unavoidable, and fully justified. *Ali*, 75 Va. App. at 43 (emphasis added); *see also Osman*, 76 Va. App. at 662 ("[P]andemic-related delays attributed to the Commonwealth are 'valid, unavoidable, and outside the Commonwealth's control.'" (quoting *Ali*, 75 Va. App. at 45)).

Here, the circuit court held that the Supreme Court's emergency orders essentially prohibited Murphy from exercising his right to a jury trial from May 18, 2020 (the date of issuance of the indictments), to November 2, 2020 (the date jury trials were resumed). The court did not evaluate the broader period between Murphy's arrest on December 28, 2019, and the dismissal of the charges on February 25, 2021. Nevertheless, the court found that "the reason for the delay"—the pandemic related suspension of jury trials—was a factor that weighed "significantly" in Murphy's favor.

In *Murphy I*, we found that, of the 425 days between Murphy's arrest in December 2019 and the dismissal of the indictments in February 2021, 96 days counted against Murphy due to "his decision to request a jury trial rather than plead guilty." *Murphy I*, slip op. at 9. Of the remaining 329 days, we found that 148 days were "attributable to the pandemic" and 181 days were "attributable to the Commonwealth in the ordinary course." *Id.* We clarified that although the Commonwealth was "*directly responsible*" for only 181 days, it bore "'ultimate responsibility'" for the 148-day delay attributed to the pandemic. *Id.* at 9-10 (quoting *Barker*, 407 U.S. at 531) (emphasis added). *Murphy I* held that the pandemic-related delays were "valid

- 7 -

and unavoidable." *Id.* at 13.  Thus, *Murphy I* concluded that the circuit court erred in determining that the delays due to the pandemic weighed in Murphy's favor.  *Id.* at 10-13.

Murphy argues that by attributing 148 days to the pandemic rather than the Commonwealth, *Murphy I* "skipped an important part" in the analysis under the second *Barker* prong and effectively relieved the Commonwealth of its obligation to justify that portion of the delay.  Murphy asserts that the pandemic-related delays were not valid and unavoidable but rather caused by "administrative and operational restrictions put in place by the Commonwealth," through the Supreme Court acting as its "agent," in response to the COVID-19 pandemic.  Murphy insists that the Commonwealth's negligence caused the 148-day delay that *Murphy I* attributed to the pandemic and, therefore, *Murphy I* should have weighed that delay against the Commonwealth.

Murphy's arguments are unpersuasive.  Although *Murphy I* held that 148 days were "attributable to the pandemic," the decision clarified that the Commonwealth was ultimately responsible for that portion of the delay.  *Murphy I*, slip op. at 9-10.  Moreover, consistent with *Ali*, the opinion held that the delays caused by the pandemic were valid and unavoidable.  *Id.* at 13.  *Murphy I* therefore correctly concluded that the circuit court erred in weighing the delays caused by the pandemic in Murphy's favor.[5]  *Id.*  In short, consistent with *Ali*, which was decided after the circuit court ruled here, the pandemic period delay was unavoidable and justifiable which does not weigh in Murphy's favor.

---

[5] To the extent that Murphy argues that we should overturn *Ali*, this Court is bound by the doctrine of interpanel accord.  Under that doctrine, "a decision of a panel of the Court of Appeals becomes a predicate for application of the doctrine of *stare decisis* until overruled by a decision of the Court of Appeals sitting *en banc* or by a decision of th[e] [Supreme] Court."  *Brown v. Commonwealth*, 68 Va. App. 44, 51 n.1 (2017) (second alteration in original) (quoting *Johnson v. Commonwealth*, 252 Va. 425, 430 (1996)).

III. *Assertion of right*

"The third factor in the balancing test involves whether the accused asserted his right to a speedy trial." *Ali*, 75 Va. App. at 46. "Although a defendant does not forever waive his right to a speedy trial by failing to assert it, it is 'one of the [four] factors to be considered in an inquiry into the deprivation of the right.'" *Shavin v. Commonwealth*, 17 Va. App. 256, 270 (1993) (alteration in original) (quoting *Barker*, 407 U.S. at 528). "Additionally, delay in asserting the right weighs against finding a violation." *Ali*, 75 Va. App. at 46 (citing *Howard v. Commonwealth*, 281 Va. 455, 462 (2011)). "This factor also permits the court to 'weigh the frequency and force of the [objection to delay] as opposed to attaching significant weight to a purely *pro forma* objection.'" *Id.* (alteration in original) (quoting *Rogers v. Commonwealth*, 5 Va. App. 337, 347 (1987)).

The United States Supreme Court has recognized that requesting a jury trial is different from asserting one's right to a speedy trial. *See Barker*, 407 U.S. at 519 ("The right to a speedy trial is generically different from any of the other rights enshrined in the Constitution for the protection of the accused."); *see also Brown v. Epps*, 91 Va. 726, 737 (1895) (emphasizing that "several [different] rights [are] enumerated" in Article 1, Section 10 of the Virginia Constitution and that each one "stand[s] upon an equal footing"). We have also recognized that an accused's request for release on bail, of itself, does not "constitute an assertion of the [constitutional] right to a speedy trial." *Ali*, 75 Va. App. at 46.

This Court has found that a constitutional speedy trial violation did not occur where a defendant "did not formally assert his right to a speedy trial until he filed a written motion" to dismiss several years after his arrest. *Shavin*, 17 Va. App. at 270. Similarly, in *Ali*, we found that the third *Barker* factor weighed only slightly in the defendant's favor where he did not assert his constitutional speedy trial right until "six and one-half months" after his arrest. *Ali*, 75

Va. App. at 46. We emphasized that although the defendant had previously requested bail, that request "did not constitute an assertion of the [constitutional] right to a speedy trial." *Id.*

Here, the circuit court weighed the third *Barker* factor in Murphy's favor, finding that Murphy had asserted "his constitutional right" "at least" since June 25, 2020. The court found that Murphy "repeatedly asserted his rights as an accused" and "actively participated in his defense" by requesting bond, seeking discovery, and considering a guilty plea. The circuit court emphasized the fact that Murphy had requested a jury trial four times between June 25, 2020, and January 5, 2021, as "[m]ost important[]."

*Murphy I* held that the third *Barker* factor "weigh[ed] only slightly in [Murphy]'s favor" because he did not assert his constitutional speedy trial right until he moved to dismiss the charge about 13 months after his arrest. *Murphy I*, slip op. at 15. We noted that although Murphy "mention[ed] his speedy trial right" during a bond hearing about "35 days before trial," he did not expressly assert his *constitutional* right to speedy trial at that time. *Id.* We emphasized that Murphy's requests for a jury trial were not assertions of his constitutional speedy trial right because "[a]s a matter of law, requesting a jury trial is qualitatively different from asserting one's right to a speedy trial." *Id.* at 14. Thus, we held that the trial court erred in finding that Murphy "asserted his constitutional right to speedy trial" on June 25, 2020, by demanding a jury trial. *Id.* at 15.

Murphy acknowledges that "Virginia courts have held that one's 'delay in asserting the [constitutional speedy trial] right weighs against finding a violation'" but maintains that those cases are erroneous. Murphy also asserts that "[w]hile one's request for a jury trial alone does not implicate one's speedy trial rights, the repeated demand of a jury trial should be weighed as heavily towards the defendant as his perceived avoidance is weighed against him." He contends that *Murphy I* erroneously weighed the third *Barker* factor.

For the reasons expressed in *Murphy I*, the record established that Murphy did not assert his constitutional right to speedy trial until he moved to dismiss the indictments about 13 months after his arrest. *Murphy I*, slip op. at 14-15. Thus, Murphy's "delay in asserting the right weighs against finding a violation." *Ali*, 75 Va. App. at 46. The circuit court therefore erred in concluding that this factor weighed in Murphy's favor.[6]

IV. *Prejudice*

"The fourth and final *Barker* factor involves an assessment of prejudice to the defendant." *Id.* at 47. "[T]he constitutional speedy trial right aims to protect three separate interests: '(1) preventing oppressive pretrial incarceration; (2) minimizing the accused's anxiety; and (3) limiting the possibility that the defense will be impaired.'" *Osman*, 76 Va. App. at 666 (quoting *Kelley*, 17 Va. App. at 546). "The most important of these interests is the third one." *Ali*, 75 Va. App. at 47.

"Prejudice is assessed under a 'three-tiered test requiring [proof of] varying levels of prejudice depending on [factor two of *Barker*,] the degree of culpability of the government." *Id.* (alterations in original) (quoting *Shavin*, 17 Va. App. at 268).

> When "the Commonwealth bears no fault in the delay and proceeds 'with reasonable diligence,'" appellant's speedy trial claim will fail "as a matter of course however great the delay" unless appellant can show "specific prejudice" to his defense (the third interest) *or "some degree of prejudice for one of the first two interests*."

*Osman*, 76 Va. App. at 667 (emphasis added) (quoting *Ali*, 75 Va. App. at 47-48). Conversely, "[a] delay caused by governmental negligence 'occupies the middle ground.'" *Ali*, 75 Va. App at

---

[6] To the extent that Murphy argues that we should reverse, modify, or overturn our prior decisions establishing that an accused's delay in asserting his constitutional speedy trial rights weighs against finding a violation, we are bound by the interpanel accord doctrine. *Brown*, 68 Va. App. at 51 n.1. Additionally, we are "'bound by decisions of the Supreme Court of Virginia and are without authority to overrule' them." *Vay v. Commonwealth*, 67 Va. App. 236, 258 n.6 (2017) (quoting *Roane v. Roane*, 12 Va. App. 989, 993 (1991)).

47 (quoting *Doggett v. United States*, 505 U.S. 647, 656-57 (1992)). But "[t]o prove even generalized prejudice based on one of the first two interests . . . a defendant must establish *a particularly prolonged or restrictive period of incarceration or a level of anxiety exceeding that faced by others awaiting trial*." *Id.* at 48 (emphasis added).

Under those principles, we have held that a defendant failed to "prove the requisite degree of prejudice" for "any of the three interests" where he argued that his "extended" incarceration throughout the pretrial period was "oppressive" and impaired his ability to prepare a defense because "numerous pandemic related restrictions" at the jail "limited his ability to interact with his new counsel." *Id.* at 49.

Here, the circuit court weighed the prejudice factor in Murphy's favor. It held that the first interest, the need to prevent oppressive pretrial incarceration, was "the most serious of the[] three interests" in the case. The court assigned "lesser weight" to the second and third interests, including the possibility of specific prejudice to Murphy's defense from the death of a "potential witness."

In *Murphy I* we held that the circuit court erred in assessing prejudice because the Commonwealth was "*not at fault*" in causing the delay and, therefore, "the *only* interest of relevance" was the third one, specific prejudice to Murphy's defense. *Murphy I*, slip op. at 16 (second emphasis added). We concluded that Murphy did not establish specific prejudice and, therefore, his constitutional speedy trial claim failed. *Id.* at 19.

Murphy contends that *Murphy I* failed to consider "all three interests when assessing prejudice" as *Barker* requires. Regarding the first interest, Murphy asserts that he suffered "undue and oppressive" pretrial incarceration because he was "continually incarcerated" for about 13 months and, during that time, he faced a heightened risk of infection from COVID-19. Additionally, regarding the second interest, Murphy argues that he experienced "anxiety" due to

the delays because "it stretches credulity to assume that his lengthy time in jail did not cause him some concern" and "the rates of COVID-19 infections and deaths in jails and prisons soared during the height of the pandemic."

*Murphy I* did focus on the third factor (specific prejudice to his defense) in assessing prejudice. Indeed, *after* we decided *Murphy I*, we clarified in *Osman* that

> [w]hen "the Commonwealth bears no fault in the delay and proceeds 'with reasonable diligence,'" appellant's speedy trial claim will fail "as a matter of course however great the delay" unless appellant can show "specific prejudice" to his defense (the third interest) *or "some degree of prejudice for one of the first two interests*."

*Osman*, 76 Va. App. at 667 (emphasis added) (quoting *Ali*, 75 Va. App. at 47-48). Here, however, Murphy failed to demonstrate prejudice for any of the three interests. For the reasons expressed in *Murphy I*, Murphy did not show specific prejudice to his defense. *Murphy I*, slip op. at 15-19. As to the other factors, Murphy's vague assertions that his incarceration was "oppressive" and caused "anxiety" do not establish "a particularly prolonged or restrictive period of incarceration or a level of anxiety exceeding that faced by others awaiting trial."[7] *Ali*, 75 Va. App. at 48. As Murphy did not demonstrate the requisite degree of prejudice for any of the three interests, the circuit court erred in concluding that the fourth *Barker* factor weighed in Murphy's favor.

---

[7] Although Murphy argues on brief that he experienced a heightened risk of infection from COVID-19 while incarcerated that caused "anxiety" and rendered his confinement "undue and oppressive," we do not consider it because he did not raise this argument during the proceedings below. Rule 5A:18. Murphy does not invoke the ends of justice or good cause exceptions to Rule 5A:18, and we will not do so sua sponte. *Edwards v. Commonwealth*, 41 Va. App. 752, 761 (2003) (en banc).

CONCLUSION

*Murphy I* correctly concluded that the circuit court erred in dismissing the indictments on constitutional speedy trial grounds. For the above reasons, we affirm Murphy's conviction.

*Affirmed*.