COURT OF APPEALS OF VIRGINIA

Present:   Chief Judge Decker, Judges Ortiz and Causey
Argued by videoconference

**PUBLISHED**

JOVAN ANTHONY ALI

v.        Record No. 0434-21-4

COMMONWEALTH OF VIRGINIA

OPINION BY
CHIEF JUDGE MARLA GRAFF DECKER
MAY 31, 2022

FROM THE CIRCUIT COURT OF FAIRFAX COUNTY
Randy I. Bellows, Judge

(Thomas F. Koerner, Jr., on brief), for appellant.  Appellant
submitting on brief.

Timothy J. Huffstutter, Assistant Attorney General (Mark R.
Herring,[1] Attorney General, on brief), for appellee.


Jovan Anthony Ali was tried by a jury and convicted of unlawful wounding in violation

of Code § 18.2-51.  On appeal, he contends that the conviction violated his statutory and

constitutional speedy trial rights.  We hold that the record supports the trial court's rulings on

these issues, resulting in part from the judicial emergency orders entered by the Supreme Court

of Virginia in response to the COVID-19 pandemic.  Accordingly, we affirm the conviction.

## I.  BACKGROUND[2]

The appellant was charged with malicious wounding following his stabbing of an

acquaintance in July 2019.  About two months later, in October 2019, the appellant was arrested

on the warrant for malicious wounding and denied bail.

---

[1] Jason S. Miyares succeeded Mark R. Herring as Attorney General on January 15, 2022.

[2] On appeal, this Court views the evidence and all reasonable inferences flowing from it
in the light most favorable to the Commonwealth, the party who prevailed in the trial court.
*Goodwin v. Commonwealth*, 71 Va. App. 125, 129 n.1, 146-47 (2019).

The preliminary hearing was set but continued several times. In March 2020, the district court found probable cause to certify the charge to the grand jury, and the grand jury issued an indictment for aggravated malicious wounding on March 16, 2020.

Also on March 16, 2020, the Supreme Court of Virginia issued its first judicial emergency order in response to the COVID-19 pandemic, restricting trials and non-emergency proceedings as a result. *See In re:* Order Declaring a Judicial Emergency in Response to COVID-19 Emergency 1-2 (Va. Mar. 16, 2020).[3] In the months that followed, the Supreme Court issued additional emergency orders that suspended jury trials entirely for a period of about eight weeks. *See* EDO of May 6, at 5 ¶ 12; EDO of June 22 (6th Order), at 5 ¶¶ 15-16; EDO of July 8, at 1 ¶ 2. The Court then directed that jury trials could be resumed by each judicial circuit that received approval of a written plan detailing how that circuit would conduct such trials safely in light of the pandemic. *See* EDO of June 22 (6th Order), at 5-6 ¶¶ 15-16; EDO of July 8, at 1 ¶ 2.

With regard to the appellant's case, on March 19, 2020, three days after he was indicted and the Supreme Court issued its first judicial emergency order, the appellant's attorney sought to withdraw as counsel. The trial court permitted the withdrawal and appointed new counsel. On April 23, 2020, before the Supreme Court suspended all jury trials for an indefinite period as of May 6, the trial court held a status hearing and set the appellant's jury trial for August 2020. *See* EDO of May 6, at 5 ¶ 12. The order entered at the April 23 status hearing reflected that the appellant agreed that "speedy trial [was] tolled" from March 19 to April 23, 2020. The order also noted that he "object[ed] on speedy trial [grounds] from [that day] forward."

---

[3] Additional references in this opinion to the Supreme Court's first order and subsequent related orders are to "emergency order" or "EDO of [date]." *See* EDO of Apr. 22, at 1 (referring to the Supreme Court's first three orders "collectively . . . as the 'Emergency Declaration Orders'"). All cited orders were issued in 2020 and are available on the Supreme Court's website. *See* https://www.vacourts.gov/news/items/covid/scv_emergency_orders.pdf.

In July 2020, over the appellant's objection, the court continued his August trial due to COVID-19 and rescheduled it for October 2020. In September 2020, Fairfax County received approval for its plan to resume jury trials and expected to begin conducting such trials again in early November, after altering the courthouse to comply with the plan. Consequently, shortly before the appellant's scheduled October trial date, the court entered an additional order continuing the trial to November 9, 2020.

Later in October 2020, the appellant made a motion to dismiss the charges against him on constitutional and statutory speedy trial grounds. The judge denied the motion.

The appellant's jury trial, the very first one held in the circuit following implementation of its approved pandemic protocols, took place from November 9 to 17, 2020. After the presentation of the Commonwealth's case and the trial court's denial of the appellant's motion to strike the aggravated malicious wounding charge, the appellant testified in his own behalf. He admitted stabbing the victim but claimed that he acted in self-defense. The jury convicted the appellant of the lesser-included offense of unlawful wounding and recommended a sentence of five years.

After trial, the appellant renewed his speedy trial challenges. The court again denied the motion and sentenced him to five years in prison in conformity with the jury's recommendation.

## II. ANALYSIS

The appellant contends that the denial of his motion to dismiss was error because his right to a speedy trial under both Code § 19.2-243 and the United States and Virginia Constitutions was violated. He suggests that his conviction should be reversed and the indictment dismissed as a result.

A. Statutory Speedy Trial Claim

The appellant challenges the trial court's conclusion that the period of time between his preliminary hearing and trial did not violate his right to a speedy trial under Code § 19.2-243.

"[A] statutory speedy trial challenge presents a mixed question of law and fact." *Young v. Commonwealth*, 297 Va. 443, 450 (2019). The appellate court gives deference to the trial court's factual findings but reviews legal issues *de novo*, including questions regarding the proper construction of a statute. *Id.*; *see Smith v. Commonwealth*, 282 Va. 449, 454 (2011); *Jacks v. Commonwealth*, ___ Va. App. ___, ___ (May 17, 2022) (*en banc*) (applying the *de novo* standard to the interpretation of statutes and the Virginia Supreme Court's pandemic emergency orders).

Legislative intent is determined "from the words used in [a] statute, applying the plain meaning of the words unless they are ambiguous or [doing so] would lead to an absurd result." *Wright v. Commonwealth*, 278 Va. 754, 759 (2009). Additionally, the Code of Virginia constitutes a single "body of . . . laws." *Amonett v. Commonwealth*, 70 Va. App. 1, 10 (2019) (quoting *Lucy v. Cnty. of Albemarle*, 258 Va. 118, 129-30 (1999)). Consequently, "a common canon of statutory construction [provides] that when the legislature uses the same term in separate statutes, that term has the same meaning in each unless the General Assembly indicates to the contrary." *Ricks v. Commonwealth*, 290 Va. 470, 478 n.1 (2015) (quoting *Commonwealth v. Jackson*, 276 Va. 184, 194 (2008)). We review the appellant's statutory speedy trial challenge under these well-established principles.

Virginia's speedy trial statute, Code § 19.2-243, provides that if an adult defendant "is held continuously in custody" following a district court's finding of "probable cause to believe that [he] has committed a felony, the accused . . . shall be forever discharged from prosecution for such offense if no trial is commenced in the circuit court within five months from the date" of

that finding. The five-month period, however, is "not absolute." *Young*, 297 Va. at 451. The statute provides for tolling the period based on a continuance granted upon request of the defendant or his counsel. *Id.* at 451-52; *see* Code § 19.2-243(4). It similarly provides for tolling if the defendant joins in or fails to object to a continuance motion made by the Commonwealth or "initiated by the court . . . 'sua sponte.'" *Young*, 297 Va. at 451-52 (quoting *Howard v. Commonwealth*, 281 Va. 455, 461 (2011)). The statute also expressly directs that its provisions do not apply to any period of time during which "failure to try the accused was caused . . . [b]y a natural disaster." Code § 19.2-243(7); *see* EDO of May 1, at 1.

A related statute, Code § 17.1-330, provides Virginia's Chief Justice with the power to declare a "judicial emergency" in the event of "a disaster, as defined in Code § 44-146.16," when that disaster "substantially endangers or impedes" certain specified "operation[s] of a court." Code § 17.1-330(A); *see* EDO of Aug. 7, 299 Va. 99, 99 (2020) (discussing "substantial" endangerment and impedance). The Chief Justice may declare a judicial emergency "for the Supreme Court sua sponte" or "for any court upon the request of the Governor." Code § 17.1-330(A)(i)-(ii). The judicial emergency statute further provides that a judicial emergency *order* may "suspend" or "toll" various "deadlines" or "time schedules" imposed by "otherwise applicable statutes, rules, or court orders in any court processes and proceedings." Code § 17.1-330(D); *see* EDO of Mar. 27, at 1; EDO of May 1, at 1-2.

"Disaster" as used in the judicial emergency statute includes various "natural disaster[s]" such as "any communicable disease [that presents a] public health threat." Code § 44-146.16; *see* Code § 17.1-330(A); EDO of Aug. 7, 299 Va. at 99. A communicable disease that presents a public health threat is, in part, "an illness of public health significance, as determined by the State Health Commissioner," that "is known to be readily transmitted . . . from one individual to

another and has been found to create a risk of death or significant injury or impairment." Code § 44-146.16.

Finally, the judicial emergency statute imposes a limit of twenty-one days on each emergency order. Code § 17.1-330(E). Nevertheless, the Court may extend the emergency for additional twenty-one-day periods upon a majority vote. *Id.* The statute expressly provides that "[i]n the event of a communicable disease [that presents a] public health threat, as defined in § 44-146.16, a majority of the justices . . . may extend such order *for the duration of the threat*." *Id.* (emphasis added).

In light of this statutory framework, coupled with the Supreme Court's emergency orders covering the relevant time frame, the record in this case entirely supports the trial court's determination that the appellant's statutory speedy trial rights were not violated. The state health commissioner declared COVID-19 a communicable disease that presents a public health threat in February 2020. *See* M. Norman Oliver, State Health Comm'r, Va. Dep't of Pub. Health, Declaration of Coronavirus as a Communicable Disease of Public Health Threat (Feb. 7, 2020), https://www.vdh.virginia.gov/content/uploads/sites/134/2021/07/VDH-Declaration-of-Public-Health-Threat_nCoV-Final_maw_lp.pdf. The appellant's preliminary hearing occurred on March 9, 2020, beginning the running of the statutory speedy trial period. One week later, on March 16, 2020, the Supreme Court issued its first emergency order due to the pandemic. *See* EDO of Mar. 16. It did so at the request of the governor, as permitted by Code § 17.1-330(A), *see* EDO of Mar. 16, at 1, based on the state health commissioner's February 2020 declaration that COVID-19 was a communicable disease that presented a public health threat, *see* Code § 44-146.16. After the Supreme Court's initial order of March 16, the Court entered a series of

additional orders extending the judicial emergency, as well as various clarification orders, until the appellant's trial commenced on November 9, 2020.[4]  *See* EDOs of Mar. 27 to Nov. 9.

The Supreme Court's first order restricted nonemergency proceedings due to the pandemic, "including jury trials, *subject to a defendant's right to a speedy trial*."  EDO of Mar. 16, at 2 ¶ 1 (emphasis added).  Subsequently, however, the Court clarified that its initial restriction of jury trials "subject to" speedy trial rights referred to the *constitutional* right to a speedy trial.  *See* EDO of May 1, at 2.  It explained that its original March 16 order, as well as its orders of March 27 and April 22, *tolled* the running of any *statutory* speedy trial period "from March 16 until May 17 or later if further extended by th[e] Court."  *Id.*  By emergency order of May 6, the Court continued the judicial emergency and the tolling of speedy trial deadlines under Code § 19.2-243.  *See* EDO of May 6, at 3, 5 ¶ 8.  Thereafter, the Supreme Court entered a series of additional orders.  Those orders extended the judicial emergency until after the appellant's November 2020 trial commenced.  They specifically provided that the "tolling of the running of any statutory speedy trial period applicable to criminal prosecutions . . . continued."  EDO of Sept. 11, at 1; *see* EDO of June 1, at 2, 5 ¶ 9; EDO of June 22 (6th Order), at 4 ¶ 11; EDO of Oct. 19.  The Court also explicitly indicated in a clarification order of September 11, 2020, that this tolling remained in effect despite its approval of any circuit court's "plan to restart jury trials" and would continue "unless amended by future order."  EDO of Sept. 11, at 1-2.  No such amendment occurred prior to the appellant's trial.  *See* EDOs of Sept. 11 to Nov. 9.

---

[4] The appellant concedes that the speedy trial statute was tolled from March 19 to April 23, 2020, because his attorney withdrew and requested a continuance to allow him to obtain new counsel.  *See* Code § 19.2-243(4); *Wallace v. Commonwealth*, 65 Va. App. 80, 90-92 (2015), *aff'd mem.*, 292 Va. 1 (2016).

Consequently, we hold that the trial court did not err by ruling that the appellant's statutory speedy trial rights were not violated and by denying the motion to dismiss as a result.[5]

### B. Constitutional Speedy Trial Claim

The appellant contends that the trial court erroneously ruled that holding his trial more than a year after his arrest did not violate his right to a speedy trial under the United States or Virginia Constitution. He suggests that the trial court improperly weighed some of the factors in *Barker v. Wingo*, 407 U.S. 514 (1972), and therefore erroneously denied his motion to dismiss.

Constitutional issues present questions of law reviewed *de novo* on appeal. *Wallace v. Commonwealth*, 65 Va. App. 80, 88 (2015), *aff'd mem.*, 292 Va. 1 (2016). To the extent such review involves underlying factual findings, those findings may not be disturbed unless "plainly wrong" or "without evidence to support them." *Wilkins v. Commonwealth*, 292 Va. 2, 7 (2016).

This Court is guided in its analysis by bedrock principles of law. Both the United States and Virginia Constitutions provide criminal defendants with the right to a speedy trial. *See* U.S. Const. amend. VI; Va. Const. art. 1, § 8; *Klopfer v. North Carolina*, 386 U.S. 213, 222-26 (1967). Virginia's constitutional speedy trial right is coextensive with the federal right. *Holliday v. Commonwealth*, 3 Va. App. 612, 615-16 (1987) (citing *Fowlkes v. Commonwealth*, 218 Va. 763, 764 n.2 (1978)). Accordingly, such claims may be analyzed "without distinction." *Id.* The remedy for such a violation, if proved, is dismissal of the charge with prejudice. *See Strunk v. United States*, 412 U.S. 434, 439-40 (1973) (citing *Barker*, 407 U.S. at 522).

---

[5] The appellant does not allege that the Supreme Court lacked the authority to enter the various emergency orders or toll the speedy trial statute for the duration of the pandemic. Therefore, we do not address the Supreme Court's authority. Likewise, we do not address the trial judge's alternate ruling that the speedy trial statute would have been tolled "even absent" the Supreme Court's judicial emergency orders. *See Commonwealth v. White*, 293 Va. 411, 419 (2017) (explaining that appellate courts must resolve cases on the best and narrowest ground).

The right to a speedy trial "is as fundamental as any of the rights secured by the Sixth Amendment" of the U.S. Constitution. *Beachem v. Commonwealth*, 10 Va. App. 124, 130 (1990) (quoting *Klopfer*, 386 U.S. at 223). Nonetheless, the right is "necessarily relative" and "does not preclude the rights of public justice." *Id.* (quoting *Beavers v. Haubert*, 198 U.S. 77, 87 (1905)). A "balance must be maintained to properly protect the interests of all parties involved." *Id.* This analysis is sometimes "consistent with delays." *Barker*, 407 U.S. at 522 (quoting *Beavers*, 198 U.S. at 87). A key difference between the right to a speedy trial and other constitutional rights afforded an accused is that a supposed "deprivation" of the speedy trial right "does not per se prejudice the accused's ability to defend himself" and "may [actually] work to [his] advantage." *Id.* at 521 (noting that "[d]elay is not an uncommon defense tactic"). It is through this lens that constitutional speedy trial challenges must be viewed.

The constitutional test requires balancing four factors—the "[l]ength of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant."[6] *Id.* at 530; *see Howard v. Commonwealth*, 281 Va. 455, 462 (2011). None of the factors is either "necessary or sufficient" to finding a violation. *Kelley v. Commonwealth*, 17 Va. App. 540, 544 (1994). Instead, "they are related factors that 'must be considered together with . . . other [relevant] circumstances.'" *Id.* (quoting *Barker*, 407 U.S. at 533). These circumstances include the "conduct of both the prosecution and the defendant." *Wallace*, 65 Va. App. at 97 (quoting *Jones v. Commonwealth*, 13 Va. App. 566, 572 (1992)). On appeal, a defendant must establish that "on balance," the factors "weigh in his favor." *United States v. Thomas*, 55 F.3d 144, 148 (4th Cir. 1995). The Court reviews the constitutional challenge with these principles in mind.

---

[6] Unlike the statutory speedy trial right in Virginia, the constitutional right cannot be "quantified into a specified number of days or months." *Barker*, 407 U.S. at 523.

1. Specific Speedy Trial Factors Under *Barker*

a. Length of Delay

The first factor, the length of the delay, "is to some extent a triggering mechanism" for constitutional speedy trial analysis. *Barker*, 407 U.S. at 530. Absent "sufficient delay to be 'presumptively prejudicial, there is no necessity for inquiry into the other factors.'" *Kelley*, 17 Va. App. at 544 (quoting *Barker*, 407 U.S. at 530). The delay is calculated from the time of arrest. *See Fowlkes*, 218 Va. at 766. It is well established that delay "approach[ing] one year" is "presumptively prejudicial" and requires further review. *Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992); *see Barker*, 407 U.S. at 530-31; *Miller v. Commonwealth*, 29 Va. App. 625, 633 (1999) (holding that a delay of about thirteen months between the filing of the detainer and the defendant's trial was presumptively prejudicial and required further review); *see also Kelley*, 17 Va. App. at 545 (characterizing a "misdemeanor or lesser offense" as justifying a shorter delay than "a more serious crime").

In the instant case, the trial court found that the appellant was in custody for a "lengthy period" and proceeded to examine the other *Barker* factors. The appellant was arrested on October 7, 2019, and remained in custody until trial on November 9, 2020.[7] This delay was 399 days or just over thirteen months. On this record, the trial court correctly held that the delay was presumptively prejudicial under *Barker*, triggering a review of the length of the delay in combination with the remaining factors. *See Barker*, 407 U.S. at 530, 533.

b. Reasons for Delay

Once it is established that a delay was "'presumptively prejudicial,' the burden '[shifts to] the Commonwealth,'" under the second factor of the *Barker* test, to show two things. *Beachem*,

---

[7] The appellant alleges on brief that he was arrested on the malicious wounding charge in Washington, D.C., on August 2, 2019, but he provides no citation to the record for this assertion, and we see nothing in the record to support it.

10 Va. App. at 131-32 (quoting *Fowlkes*, 218 Va. at 767), *quoted with approval in Wallace*, 65 Va. App. at 98. First, the prosecution must show "what delay was attributable to the defendant and not to be counted against the Commonwealth." *Fowlkes*, 218 Va. at 767. Second, it must show what part of any delay not attributable to the defendant was "justifiable." *See id.*

(1) Apportionment of Delay Between the Defense and Prosecution[8]

In this section, the Court determines which portion of the delay between the appellant's arrest and his trial is attributable to him and which portion counts against the Commonwealth.

(a) October 7, 2019, to April 23, 2020:
The Appellant's Arrest to his Assertion of the Speedy Trial Right

The appellant was arrested on the Virginia warrant on October 7, 2019. Counsel was appointed for him, and his preliminary hearing was set for November 19, 2019. Consequently, this period of forty-three days is attributable to the Commonwealth in the ordinary course of the administration of justice.

The next time period covers the first continuance of the preliminary hearing date, from November 19, 2019, to January 28, 2020, a span of seventy days. The information in the record regarding this period is ambiguous, and the trial court did not expressly consider this period of time in making its ruling. The appellant does not allege that the Commonwealth was in any way at fault in failing to hold his preliminary hearing during this period of time but merely that the period is chargeable to the prosecution. We assume without deciding that this period is

---

[8] The circuit court specifically addressed only the period of time from when the appellant asserted his speedy trial right in April 2020 until his trial in November. The court did not expressly evaluate the earlier period from his October 2019 arrest to his assertion of the right.

attributable to the Commonwealth in the ordinary course of the administration of justice. *See*

*McGinnis v. Commonwealth*, 296 Va. 489, 501 (2018).[9]

The subsequent time period involves the second continuance of the preliminary hearing, from January 28 to February 26, 2020, a period of twenty-nine days. The record reflects that the appellant's attorney requested a continuance of the January 28 preliminary hearing date due to a "calendar conflict" and the court granted the motion, continuing the hearing to February 26. This period of twenty-nine days is attributable to the appellant.[10] *See Vermont v. Brillon*, 556 U.S. 81, 90-91 (2009) (recognizing that except under unusual circumstances, delay caused by defense counsel, even if court appointed, is "charged against the defendant").

The February 26, 2020 preliminary hearing was continued for a period of twelve days, until March 9, 2020, on the prosecutor's motion with the consent of the appellant's counsel. The preliminary hearing was in fact held on March 9, 2020, and the court found probable cause to believe the appellant committed the charged offense. Under a *constitutional* speedy trial analysis, the mere failure of the accused to object to a particular continuance does not mean that the relevant time is attributed to him and excluded from the constitutional calculation. *See Fowlkes*, 218 Va. at 768-69. *See generally Barker*, 407 U.S. at 529 (acknowledging that if a

---

[9] The doctrine of judicial restraint requires that appellate courts decide cases on the best and narrowest ground. *White*, 293 Va. at 419. The mechanism of assuming without deciding a particular point in issue sometimes facilitates the appellate court's achievement of this goal. *See McGinnis*, 296 Va. at 501 (assuming without deciding on procedural grounds that an issue could be reviewed in order to resolve the appeal on the merits, which provided the best and narrowest ground for resolution). As noted in the analysis, we assume without deciding that several different periods of delay are attributable to the Commonwealth because doing so does not change the outcome of the appeal and allows the Court to resolve the issue on the best and narrowest ground.

[10] The appellant, on brief, expressly accepts responsibility only for the time from March 19 to April 23, 2020, a period of thirty-five days. Elsewhere in his brief, however, he notes that he was responsible for delays totaling "2 months." His acceptance of responsibility for an additional period of about twenty-six unspecified days roughly covers this period of January 28 to February 26.

- 12 -

delay is attributable to the *defendant*, "his waiver may be given effect under standard waiver doctrine"); *Shavin v. Commonwealth*, 17 Va. App. 256, 265, 269 (1993) (holding that a period of delay was "excusable" under a constitutional speedy trial claim "based on [the defendant's] admitted consent" in writing to the resolution of *his* pretrial motions and the trial of a codefendant). Accordingly, we again merely assume without deciding that this twelve-day period is attributable to the Commonwealth in the ordinary course. *See supra* note 9.

With regard to the next period at issue, after the district court found probable cause to certify the charges to the grand jury at the preliminary hearing on March 9, seven days elapsed before the grand jury issued the indictment on March 16, 2020. Then an additional three days passed before the appellant's attorney sought to withdraw as counsel on March 19, 2020. The Commonwealth accepts responsibility for the first seven days but suggests that the period from March 16 to 19 is attributable to the pandemic because the judicial emergency orders banned all jury trials. However, in the relevant orders, the Supreme Court initially directed that some jury trials could proceed as necessary to safeguard constitutional rights, and it did not ban *all* jury trials until May 6. *See* EDO of May 1, at 2 (clarifying that the EDO of March 16, as well as subsequent EDOs, directed circuit courts to continue criminal jury trials subject to a defendant's *constitutional* right to a speedy trial); EDO of May 6, at 5 ¶ 12. Therefore, this ten-day period from March 9 to March 19 is attributable to the Commonwealth in the ordinary course.

Regarding the time from March 19 to April 23, 2020, the appellant concedes that this delay of thirty-five days, from the date his attorney obtained leave to withdraw to the date of the next status hearing, was attributable to him.[11] We accept this concession as a waiver regarding this period of time without considering it on the merits. *See Logan v. Commonwealth*, 47

---

[11] The record supports this concession. The calendar control order from the latter date notes that the appellant "agree[d] that speedy trial [was] tolled" between those dates but that he objected "from [April 23] forward." *See Brillon*, 556 U.S. at 90; *Barker*, 407 U.S. at 529.

- 13 -

Va. App. 168, 172 & n.4 (2005) (*en banc*) (requiring independent review by the Court of proposed legal concessions but distinguishing this requirement from the principle that a concession may serve as a waiver). Accordingly, the Court attributes this period of time to the appellant.

In sum, the twenty-nine days from January 28 to February 26, 2020, and the thirty-five days from March 19 to April 23, 2020, are attributable to the appellant. The forty-three days from October 7 to November 19, 2019, and the ten days from March 9 to 19, 2020, are attributable to the Commonwealth in the ordinary course of the administration of justice. Last, we merely assume without deciding that the seventy days from November 19, 2020, to January 28, 2020, as well as the twelve days from February 26 to March 9, 2020, are also attributable to the Commonwealth in the ordinary course of the administration of justice.

(b) April 23 to November 9, 2020:
The Appellant's Assertion of the Speedy Trial Right Until Trial Began

On April 23, 2020, the appellant first asserted his constitutional right to a speedy trial, and on November 9, 2020, his jury trial began. During this period of time, circuit courts at first were severely restricted in their ability to conduct jury trials, next were wholly forbidden to do so, and then were permitted to hold them only upon receipt of the Supreme Court's approval for that particular circuit's written plan for safely resuming jury trials. On April 23, 2020, the date of the status hearing held after the appellant obtained new counsel, his trial was set for August 10, 2020. It was then continued to October 13 and again to November 9, the very first day on which the Fairfax circuit court was able to resume jury trials under its approved pandemic safety plan.

For the first thirteen days of this period, April 23 to May 6, the Supreme Court's judicial emergency orders did not wholly forbid jury trials. Therefore, we attribute this thirteen-day period to the Commonwealth in the ordinary course of the administration of justice.

- 14 -

As of May 6, the judicial emergency orders barred all jury trials for a period of weeks and then permitted their resumption only pursuant to an approved plan for the particular circuit involved. Fairfax County had not received approval to resume jury trials by August 10, the first date for which the appellant's trial had been set. To decide this case on the best and narrowest ground, we need not determine whether the delay from May 6 to the first scheduled trial date of August 10 is attributable to the pandemic or to the ordinary course of the administration of justice. Instead, we merely assume that this ninety-six-day period occurred in the ordinary course of the administration of justice.[12] *See supra* note 9.

Finally, regarding the period from the original trial date of August 10, 2020, to the actual trial date of November 9, 2020, the record establishes that the two continuances totaling ninety-one days were necessitated by the pandemic. The trial court noted that the judicial emergency orders required the circuit to obtain Supreme Court approval of its plan for the safe resumption of jury trials. It explained that after obtaining approval and making the adjustments in the physical space necessary for safety, the circuit resumed jury trials on November 9. Additionally, the court pointed out that the appellant's trial was the very first one held at that time. Finally, it concluded that the circuit "moved as expeditiously as [it] could" under the circumstances. The appellant does not argue on appeal that the circuit was in any way dilatory in developing or obtaining approval for its safety plan or that his jury trial could safely have been held any sooner, and nothing in the record would support such claims.

In sum, the thirteen days from April 23 to May 6, 2020, are attributable to the ordinary course of the administration of justice, and we merely assume without deciding that the

---

[12] Although the pandemic prohibited trying the appellant during this period, the August date was the appellant's first scheduled trial date, and the record also does not establish that the Commonwealth could have tried the appellant sooner absent the pandemic. We take no position regarding proper attribution for this period.

ninety-six days from May 6 to August 10, 2020, are attributable to the same. Finally, the ninety-one days from August 10 to November 9, 2020, are attributable to the Commonwealth due to the pandemic.

### (c) Summary of Apportioned Time

Of the approximately thirteen months (399 days) between the appellant's arrest and trial, a period of a little over two months (sixty-four days) is attributable to him due to continuances resulting from his attorney's scheduling conflict and her subsequent withdrawal. Of the remaining time, about three months (ninety-one days) are attributable to the Commonwealth as a result of the pandemic, and about eight months (244 days) occurred in the ordinary course of the administration of justice.[13] Consequently, the delay not attributable to the appellant is about eleven months (335 days), and that delay is assigned to the Commonwealth for constitutional speedy trial purposes.

### (2) Justification for Delay Attributed to the Commonwealth

Next, the Court must determine what part of the delay assigned to the prosecution was justifiable. *Beachem*, 10 Va. App. at 131-32; *see Fowlkes*, 218 Va. at 767. Although any delay not attributable to the defendant is the responsibility of the Commonwealth for speedy trial purposes, "different weights should be assigned to different reasons" for delay. *Barker*, 407 U.S. at 531. *Barker* recognizes three categories of fault for delay attributable to the government— delay that is deliberately improper, merely negligent, and valid and unavoidable. *See id.* Deliberate delay, such as that caused with an intent to "hamper the defense" or harass the defendant, "should be weighted heavily against the government," in this case the Commonwealth. *Id.* at 531 & n.32; *see United States v. Grimmond*, 137 F.3d 823, 828 (4th Cir.

---

[13] As noted, this analysis merely assumes without deciding that almost six months (178 days) of this period (November 19, 2019, to January 28, 2020; February 26 to March 9, 2020; and May 6 to August 10, 2020) are attributable to the Commonwealth in the ordinary course.

1998).  Negligence in scheduling, understaffing of a prosecutor's office, or "overcrowd[ing of the] courts" receives "less" weight "but nevertheless [is] considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant."  *Barker*, 407 U.S. at 531; *see Strunk*, 412 U.S. at 436.  Finally, a reason deemed "valid" fully "justif[ies] appropriate delay."  *Barker*, 407 U.S. at 531.  We look first in this case to the pandemic-related delay and then to the delay accompanying the administration of justice.

While it is true that "even in a pandemic, the Constitution cannot be put away and forgotten," the United States Supreme Court has recognized that "[s]temming the spread of COVID-19 is unquestionably a compelling [governmental] interest."  *Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67-68 (2020) (per curiam) (granting a temporary injunction); *see also United States v. Olsen*, 21 F.4th 1036, 1049 (9th Cir. 2022) (per curiam) (upholding a federal district court's suspension of jury trials due to "unprecedented public health and safety concerns" from COVID-19, in part because the ruling balanced constitutional speedy trial rights against health risks to all trial participants), *appeal docketed*, No. 21-1336 (U.S. Apr. 7, 2022).

The *Barker* framework and persuasive case authority support the trial court's conclusion that the pandemic justified appropriate delay under the third category, which encompasses "valid" reasons for delay that are not directly attributable to the government.  *See Barker*, 407 U.S. at 531.  The instant case did not involve either intentional harm or negligence toward the defendant.  *Barker* places in this "justifiable" or "no fault" category a delay caused by a witness who was missing due to factors outside the government's control.  *See id.*; *see also id.* at 533-34 (observing that a seven-month delay due to the illness of the former sheriff leading the investigation also provided "a strong excuse" for delay).  Other courts have logically held that this same rationale applies to delay caused by the pandemic.  *See, e.g.*, *United States v. Smith*, 494 F. Supp. 3d 772, 783 (E.D. Cal. 2020), *mandamus denial aff'd on other grounds sub nom.*,

*Smith v. U.S. Dist. Ct.*, 854 F. App'x 158, 160-61 & n.3 (9th Cir. 2021) (noting that the appeal rested solely on a federal speedy trial statute but stating in *dicta* that the lower court correctly found no Sixth Amendment violation); *United States v. Pair*, 522 F. Supp. 3d 185, 194-95 (E.D. Va. 2021) (rejecting the defendant's assertion that the government was partially responsible for the delay because it "failed to adequately control [the] pandemic in its early stages"), *appeal docketed*, No. 21-4269 (4th Cir. June 1, 2021); *see also State v. Brown*, 964 N.W.2d 682, 692-93 (Neb. 2021) (holding that pandemic-related delays were "valid" for purposes of federal constitutional speedy trial analysis).[14]

In this case, the pandemic made it unsafe for all witnesses and other trial participants to come to court for a period of time, rendering them justifiably absent to protect their "health and safety." *See United States v. Morgan*, 493 F. Supp. 3d 171, 190, 219 (W.D.N.Y. 2020); *see also, e.g.*, *Pair*, 522 F. Supp. 3d at 195 (applying the "missing witness" rationale of *Barker* to trial delay caused by the pandemic); *United States v. Richman*, 600 F.2d 286, 293-94 (1st Cir. 1979) (holding that trial delay caused in part by a "devastating snowstorm" was not chargeable to the government in a constitutional speedy trial analysis). The ongoing nature of the global pandemic supported the continuation of restrictions until such time as circumstances permitted the resumption of jury trials in a manner that protected both the health and safety of all participants

---

[14] Other jurisdictions have reached similar results in various published and unpublished decisions. *See United States v. Morgan*, 493 F. Supp. 3d 171, 190, 219 (W.D.N.Y. 2020); *United States v. Crittenden*, No. 20-CR-7, 2020 WL 5223303, at *3 (M.D. Ga. Sept. 1, 2020); *United States v. Snyder*, No. 16-cr-160, 2021 WL 369674, at *7 (N.D. Ind. Feb. 3, 2021), *appeal docketed*, No. 21-2986 (7th Cir. Oct. 27, 2021); *United States v. Soto*, No. 18-CR-50050-01, 2021 WL 1176068, at *7 (D.S.D. Mar. 29, 2021); *United States v. Barela*, No. 20-cr-01228, 2021 WL 5459645, at *5 (D.N.M. Nov. 21, 2021); *Callender v. State*, No. C-02-CR-19-002678, 2021 WL 5371209, at *17 (Md. Ct. Spec. App. Nov. 18, 2021); *Labbee v. State*, No. A22A0246, 2022 WL 412829, at *6-7 (Ga. Ct. App. Feb. 10, 2022); *State v. Rodriguez*, No. Cr. 1811005093, 2021 WL 1221461, at *5 (Del. Super. Ct. Mar. 30, 2021). *But see Ex parte Sheffield*, 611 S.W.3d 630, 633, 635-37 (Tex. App. 2020) (remanding for trial because although circumstances "related to" the pandemic "m[ight] reasonably affect" the trial date, trial could not be delayed "indefinitely"), *cert. granted*, No. PD-1102-20 (Tex. Crim. App. Nov. 24, 2021).

and the constitutional rights of criminal defendants. As noted, the Virginia Supreme Court's judicial emergency orders suspended jury trials for a period of about eight weeks in the earlier stages of the pandemic but then directed each circuit to develop a plan for resuming jury trials safely. The trial court found that Fairfax County submitted and revised its plan in August and September 2020, obtained approval for it in mid-September 2020, and resumed jury trials after making necessary alterations in the facilities in November 2020, about six months after the full suspension was imposed. The trial court did not find that either the circuit (in applying for approval to resume jury trials) or the Supreme Court (in imposing the initial suspension and handling the resumption request) was negligent in any way, and nothing in the record would support such a finding. To the contrary, the approach of Virginia's judicial system as a whole reflects a deliberate effort to balance public health with the administration of justice.

Accordingly, the trial court did not err by declining to weigh the pandemic-related delay in the appellant's favor. The cause for the delay due to the pandemic was valid, unavoidable, and outside the Commonwealth's control. *See State v. Lewis*, 2021-Ohio-1895, at ¶ 76, 2021 WL 2285309, at *12 (Ohio Ct. App. June 4, 2021) (holding that the state was "not responsible for the unusual circumstances surrounding the pandemic" and that no evidence indicated "[s]tate neglect"); *United States v. Mayer*, No. 19-cr-0096, 2021 WL 2686133, at *9 (D. Minn. June 30, 2021) (holding that neither party was responsible for the delays caused by the pandemic and the delays were not "primarily" due to "docket congestion").

We turn next to the eight months of delay assigned to the administration of justice. The appellant does not argue that the Commonwealth was in any way at fault with regard to this delay, and no evidence indicates that the prosecution caused the delay either intentionally or negligently. Therefore, we conclude that this delay is attributable to the Commonwealth in the ordinary course and, like the pandemic-related delay, was valid and unavoidable.

Consequently, the delay for which the Commonwealth was responsible is about eleven months, but the record supports a finding that this delay was valid and unavoidable due to both the pandemic and the ordinary course of the administration of justice.

c. Assertion of Right

The third factor in the balancing test involves whether the accused asserted his right to a speedy trial. *Beachem*, 10 Va. App. at 132. The United States Supreme Court, in the context of the constitutional right, has "reject[ed] . . . the rule that a defendant who fails to demand a speedy trial forever waives his right" and instead treats this as simply "one of the factors to be considered." *Barker*, 407 U.S. at 528. However, "fail[ing] to assert the right . . . make[s] it difficult for a defendant to prove that he was denied a speedy trial." *Id.* at 532. Additionally, delay in asserting the right weighs against finding a violation. *See Howard*, 281 Va. at 462; *Shavin*, 17 Va. App. at 270; *see also Commonwealth v. Jerman*, 263 Va. 88, 94 (2002) (holding that the "perceived futility" of objecting "does not excuse" a defendant from doing so because of the duty to create a record for appeal). This factor also permits the court to "weigh the frequency and force of the [objection to delay] as opposed to attaching significant weight to a purely *pro forma* objection." *Rogers v. Commonwealth*, 5 Va. App. 337, 347 (1987) (alteration in original) (quoting *Barker*, 407 U.S. at 529).

Here, the appellant asserted his constitutional right to a speedy trial but did not do so until April 23, 2020. At that point, he had been in custody for about six and one-half months. Although he had requested bond on at least one prior occasion, that request did not constitute an assertion of the right to a speedy trial. Additionally, he did not assert this right until after the Supreme Court had already begun entering judicial emergency orders restricting the ability of circuit courts to conduct jury trials. *See* EDO of March 16, at 1-2. Therefore, while the appellant's assertion of his constitutional right to a speedy trial is entitled to some weight, it

deserves less weight than that to which it would have been entitled if he had raised it earlier, at a time before the pandemic severely limited the possibility that he could be tried promptly.

### d. Prejudice

The fourth and final *Barker* factor involves an assessment of prejudice to the defendant. The constitutional speedy trial right protects three related interests: "(1) preventing oppressive pretrial incarceration; (2) minimizing the accused's anxiety; and (3) limiting the possibility that the defense will be impaired." *Kelley*, 17 Va. App. at 546 (citing *Barker*, 407 U.S. at 532). The most important of these interests is the third one. *See Wallace*, 65 Va. App. at 100. This is so "because the inability of a defendant to prepare his case skews the fairness of the entire system." *Doggett*, 505 U.S. at 654 (quoting *Barker*, 407 U.S. at 532).

Prejudice is assessed under a "three-tiered test requiring [proof of] varying levels of prejudice depending on [factor two of *Barker*,] the degree of culpability of the government." *Shavin*, 17 Va. App. at 268. For example, if the Commonwealth "intentionally held back in its prosecution of him to gain some impermissible advantage at trial[,] . . . that official bad faith in causing delay will be weighed heavily against the government" even if "the accused cannot demonstrate exactly how it has prejudiced him." *Doggett*, 505 U.S. at 656-57. Conversely, if the Commonwealth bears no fault in the delay and proceeds "with reasonable diligence," then the defendant's "speedy trial claim w[ill] fail . . . as a matter of course however great the delay, so long as [the defendant cannot] show specific prejudice."[15] *Id.* at 656; *see Shavin*, 17 Va. App. at 269. A delay caused by governmental negligence "occupies the middle ground." *Doggett*, 505 U.S. at 656-57.

---

[15] In deciding *Doggett*, the Court referenced "specific prejudice to [the accused's] defense." 505 U.S. at 656. It also noted that impairment of the defense was the only one of the three interests that the defendant raised. *Id.* at 654.

Here, the appellant does not allege that the Commonwealth was negligent or at fault in any way in not bringing him to trial sooner than it did. Further, the trial court specifically found that due to the pandemic and the cessation of jury trials, the appellant was "b[rought] . . . to trial . . . at the earliest possible moment" after he first asserted his right to a speedy trial as of April 24, 2020. The record supports this conclusion. Because the Commonwealth was not in any way at fault in causing the portion of the delay not attributable to the appellant, he was required to prove either "specific prejudice" with regard to the third interest—impairment of his defense—or some degree of prejudice for one of the first two interests.[16] *See id.* at 654, 656.

To prove even generalized prejudice based on one of the first two interests identified in *Barker* (preventing oppressive pretrial incarceration and minimizing the accused's anxiety), a defendant must establish a particularly prolonged or restrictive period of incarceration or a level of anxiety exceeding that faced by others awaiting trial. *See Barker*, 407 U.S. at 532 (recognizing that job loss and family disruption can occur due to pretrial incarceration); *Miller*, 29 Va. App. at 634 (addressing impacts on employment); *Hakeem v. Beyer*, 990 F.2d 750, 760 (3d Cir. 1993) (observing that "substandard conditions" of confinement, if proved by the defendant, can contribute to establish oppressiveness); *Kelley*, 17 Va. App. at 546-47 (noting that the unincarcerated defendant "ma[de] no claim of suffering an abnormal degree of anxiety" while awaiting trial). To prove specific prejudice under the third interest (limiting the possibility

---

[16] We do not address whether the heightened standard of specific prejudice applies to the first two interests because we conclude that the appellant did not meet even the lower standard for proving prejudice. *Cf. Harris v. Commonwealth*, 258 Va. 576, 586 (1999) (characterizing the defendant's claims as asserting "actual prejudice to his defense" and "generalized prejudice" due to anxiety and concluding these allegations were not proved, but not citing *Doggett* or addressing whether generalized prejudice provided the proper standard of proof for the anxiety interest). *Compare, e.g.*, *United States v. Harris*, 566 F.3d 422, 433 (5th Cir. 2009) (requiring proof of "actual prejudice" with regard to all three prejudice interests in *Barker*), *with United States v. Walker*, 92 F.3d 714, 719 (8th Cir. 1996) (applying a "specific prejudice" requirement only to the third interest).

of impairing the defense), a defendant must show "in what specific manner" factors such as missing witnesses, missing evidence, or improved access to counsel "would have [impaired or] aided the defense." *United States v. Medina*, 918 F.3d 774, 781-82 (10th Cir. 2019) (quoting *United States v. Margheim*, 770 F.3d 1312, 1331 (10th Cir. 2014)); *see Kelley*, 17 Va. App. at 547 (requiring "at least . . . a factual basis for believing" that the loss of a witness's testimony might have "adversely affected the defense"); *Beachem*, 10 Va. App. at 134 (holding that the defendant's claim that his defense was impaired due to missing alibi witnesses was "sheer speculation" in part because he provided "no details" about when they moved or how he attempted to locate them); *see also Grimmond*, 137 F.3d at 830 (rejecting a claim of specific prejudice due in part to a lack of evidence that the delay resulted in unavailable witnesses, failing memories, or the loss of other evidence).

The appellant, however, did not prove the requisite degree of prejudice in the trial court under any of the three interests. On appeal, he argues generally that his "extended" incarceration throughout the pretrial period was "oppressive" and "limited his ability to interact with his new counsel." The appellant further asserts that the circumstances were "particularly difficult" due not only to the length of his pretrial detention but also to "the numerous pandemic related restrictions" in the detention center in which he was held, including his inability to access the law library.[17] It is possible that upon a showing of additional facts in the trial court, such restrictions might under certain circumstances suffice to prove specific prejudice. Here, though,

---

[17] Worthy of note is that society as a whole has been subject to significant restrictions on activity during the pandemic, including access to various public places. *See, e.g.*, *Va. Mfrs. Ass'n v. Northam*, 74 Va. App. 1, 7-8 (2021) (recognizing the limitations that the governor's executive orders imposed on the operation of various public and private facilities in the Commonwealth); *see also Roman Cath. Diocese*, 141 S. Ct. at 65-67 (discussing restrictions imposed by executive order in New York). Consequently, the effects of the pandemic have not been limited to incarcerated individuals, and the appellant would likely have faced COVID-related difficulties in preparing his defense even if he had not been incarcerated during the relevant period of time.

these very general limitations asserted by the appellant do not meet the standard for proving the required degree of prejudice with regard to any of the three interests identified in *Barker*. With regard to the third interest, classified as most important, the appellant does not articulate any *specific* way in which the delay and related restrictions impaired his ability to present a defense; nor does he point to any facts that might support such a claim.[18] In other words, the appellant has not connected these sources of *potential* prejudice to any *specific* impairment to his defense.

Additionally, our own review of the record reveals no evidence of any impairment of the appellant's defense. Surveillance video placed the appellant near the scene of the crime, and the appellant did not contest that he stabbed the victim. Instead, his defense was based on his account that the victim attacked him first and he dropped his knife as soon as the victim no longer presented a threat. The Commonwealth called the victim to testify, as well as two witnesses who the appellant admitted were present during the stabbing. The appellant had an opportunity to cross-examine all three of the men, and their accounts contradicted the appellant's testimony. Further, the appellant did not name any witnesses who he claimed could corroborate his version of events. The Commonwealth also called an additional witness, who testified that the appellant told him before the attack what he planned to do and why. The trial court observed that the appellant made no claim that witnesses lacked memory of the relevant events or that witnesses or evidence were missing due to the passage of time.

The evidence supports the trial court's ruling that the appellant did not prove the requisite degree of prejudice.

---

[18] In the trial court, unlike on appeal, the appellant set out more detailed allegations of general prejudice. He alleged that the incarceration had caused him "worry" and "panic" in part because he was "in a situation" during the pandemic that was "[not] completely safe." The appellant also asserted that the inmates had "been unable to leave their cells," "call their lawyers," "have contact meeting[s] with their lawyer[s]," or "be visited by family and friends." He did not, however, offer evidence to prove these allegations or explain any *specific* ways in which these alleged limitations impaired his ability to prepare his defense.

## 2. Overall Assessment of Factors

In balancing the *Barker* factors, although the length of the delay was presumptively prejudicial, about two months of the delay was attributable to the appellant, about three months was attributable to the Commonwealth due to the pandemic, and about eight months was attributable exclusively to the Commonwealth as part of the ordinary course of the administration of justice. The record, viewed in light of the *Barker* factors, rebuts the presumption, and the delay did not violate the appellant's constitutional right to a speedy trial.

The appellant did not assert his constitutional right to a speedy trial until April 23, 2020. This occurred about six and one-half months following his arrest, and after the Supreme Court's issuance of its first judicial emergency order due to the pandemic on March 16, 2020, so the assertion-of-right factor weighs only moderately in his favor. *Cf. Shavin*, 17 Va. App. at 270 (holding that the deciding factors in denying the defendant's constitutional claim were his delay in asserting his speedy trial right and the fact that he was tried within six months of asserting it, a period substantially shorter than the one-year period after which prejudice is presumed). He suggests that he did not "ha[ve] the opportunity to contest the continuances" and "raised the issue before the tribunal" "when possible." However, the appellant was represented throughout the proceedings by counsel, and absent evidence to the contrary in the record, counsel's action or inaction on his behalf is attributable to him. *See Brillon*, 556 U.S. at 90-91.

Finally, because the eleven-month period of delay chargeable to the Commonwealth (due to the pandemic and the administration of justice) was valid delay under *Barker*, the appellant may establish a constitutional speedy trial violation only if he proves the requisite prejudice. Instead of providing such proof, he makes only vague, nonspecific allegations that he was prejudiced because of the jail's additional physical restrictions on all inmates due to the

pandemic and the impact these had on his ability to interact with counsel and research his own case.

Consequently, any delay attributable to the Commonwealth was justifiable, and the appellant failed to prove he suffered the required degree of prejudice due to overly restrictive pretrial incarceration or anxiety or impairment of his ability to present a defense. As a result, the record supports the trial court's ruling that his constitutional right to a speedy trial was not violated.

## III.  CONCLUSION

We hold that the trial court did not err by ruling that the appellant's statutory speedy trial rights under Code § 19.2-243 were not violated. The pandemic met the requirements for a natural disaster under Code § 44-146.16, and the Supreme Court entered orders tolling the statutory speedy trial statute based on the pandemic as authorized by Code § 17.1-330. Those orders covered the vast majority of the period at issue, and only seven days of the statutory speedy trial period ran between the appellant's preliminary hearing on March 9, 2020, and his trial on November 9, 2020.

We similarly conclude that the trial court did not err by rejecting the appellant's claim that his constitutional speedy trial rights were violated due to the eleven-month delay. The portion caused by the pandemic was valid delay, and the appellant was tried on the very first day that the circuit was able to resume holding jury trials. Additionally, with regard to the remaining time, the Commonwealth did not engage in any willful or negligent acts that contributed to the delay in trying the appellant. Instead, that delay, which amounted to eight months at most, occurred in the ordinary course of the administration of justice. Finally, the appellant did not prove the requisite prejudice from the delay. Thus, based on the record before us in light of

*Barker*'s four-factor test, the trial court did not err in denying the constitutional portion of the appellant's motion to suppress.

Consequently, we affirm the appellant's conviction.

*Affirmed.*